# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

COLLIER COUNTY, a political
subdivision of the State of Florida,

       Plaintiff,

v.                           Case No:  2:17-cv-14-FtM-38CM

RTG, LLC,

       Defendant.

---

## REPORT AND RECOMMENDATION[1]

This matter comes before the Court upon review of Defendant, RTG LLC's ("RTG"), Motion for Attorneys' Fees (Doc. 55)[2] filed on March 8, 2018; Plaintiff, Collier County's, response in opposition (Doc. 57) filed on March 22, 2018; and Appellee RTG's Motion for Attorneys' Fees (Doc. 59) transferred to this Court on April 19, 2018.   Through its two motions, RTG seeks a total of $214,452.50 for attorneys' fees incurred both in the district court and on appeal.   *See* Docs. 55, 59.   Collier

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

County does not dispute RTG's entitlement to fees incurred at the district court level, but Collier County does oppose the reasonableness of the amount of such fees requested.  *See* Doc. 45; Doc. 57 at 1.   Collier County did not respond to RTG's request for fees incurred during the appeal, and thus the Court deems that request as unopposed.[3]  *See Hicks v. Deepwater Global Distrib., Inc.*, No. 6:17-cv-1472-Orl-41TBS, 2018 WL 3427876, at *1 (M.D. Fla. July 16, 2018) ("When a party fails to respond, that is an indication that the motion is unopposed.").   For the reasons stated herein, RTG's Motion for Attorneys' Fees incurred at the district court level will be granted in part and denied in part, and RTG's Motion for Attorneys' Fees incurred on appeal will be granted in part and denied in part.

## I.   Background

This litigation began as an eminent domain action to acquire land needed to expand an intersection.  Doc. 2 ¶¶ 8-9; Doc. 43 ¶¶ 1-2.   As part of the expansion project, Collier County sought a temporary construction easement and filed a petition to commence an eminent domain proceeding against RTG and Holiday CVS, LLC ("CVS") to condemn certain property owned by RTG and leased by CVS.   Doc. 2 ¶ 9, 11; Doc. 43 ¶ 2.   The taking and easement eliminated or adversely impacted a total of fourteen parking spaces used for CVS customer parking.  *See* Doc. 2 ¶ 12, 14; Doc. 43 ¶ 3.   In March 2013, the Circuit Court of the Twentieth Judicial Circuit in and for

---

[3] The Court notes both the Eleventh Circuit docket and the docket for the instant case reflect Collier County has not filed any response to RTG's Motion for Attorneys' Fees incurred on appeal, and the time to do so passed prior to transference of the motion.  *See* U.S. Court of Appeals for the Eleventh Circuit Doc. No. 17-12108; *see also* Fed. R. App. P. 27(3)(A).

Collier County, Florida "found that the County had complied with all requirements for the taking" and entered an order of taking.   Doc. 2 ¶ 20.

In May 2013, CVS unilaterally terminated its lease with RTG due to the loss of parking spaces.   *Id.* ¶ 14; Doc. 43 ¶ 4.   "CVS and RTG each claimed that, in addition to 'full compensation' for the taking, they were entitled to business and severance damages for anticipated lost business as a result of the 'taking.'"   Doc. 2 ¶ 21.   Therefore, the case proceeded to a jury trial on CVS's and RTG's damages claims in January 2014.   *Id.* ¶ 22; Doc. 43 ¶ 5.   At the trial, "CVS and RTG represented that CVS would be leaving [the RTG property] because of the 'taking[,]' thereby leaving RTG without a tenant."   Doc. 2 ¶ 24.   The jury rendered a verdict awarding RTG $3,483,000.00 for the takings and severance damages.   Doc. 43 ¶ 6; Doc. 43-2.   The jury awarded CVS $1,933,000.00 in business damages.   Doc. 2 ¶ 29; Doc. 2-2.   Collier County also was ordered to pay approximately $1,500,000.00 to CVS and RTG for attorneys' fees and expert fees.   Doc. 2 ¶ 29.   Collier County did not appeal the final judgment and paid RTG the awarded damages in full.   *Id.* ¶ 30; Doc. 43 ¶ 7.

On November 23, 2016, Collier County filed the present case in the Twentieth Judicial Circuit "to recover the monies paid pursuant to the jury verdict and final judgment in the underlying eminent domain trial on the grounds that CVS and RTG were unjustly enriched and that CVS and RTG conspired to commit extrinsic fraud on the court because CVS has yet to close the store."   Doc. 43 ¶ 9.   Collier County subsequently withdrew its claim against RTG for civil conspiracy to commit extrinsic fraud on the court.   *Id.* ¶ 10.   On January 10, 2017, CVS removed the case to this

Court, and on January 17, 2017, RTG filed a motion to dismiss the Amended Complaint. *Id.* ¶ 11; *see* Docs. 1, 2, 9.   Finding Collier County's claim barred under the doctrine of *res judicata*, the Court granted RTG's motion to dismiss and denied Collier County's request for leave to file a Second Amended Complaint. Doc. 33.

On May 9, 2017, Collier County appealed the dismissal Order. Doc. 39.   On May 15, 2017, RTG filed a motion for attorneys' fees seeking fees pursuant to Sections 73.091 and 73.092 of the Florida Statutes. Doc. 43.   RTG contemporaneously filed an Affidavit of Attorneys' Fees Incurred with attorneys' time records indicating RTG incurred $133,750.00 in attorneys' fees. Doc. 44-1 at 2.   On May 30, 2017, Collier County filed a Notice of Consent as to Entitlement to Attorneys' Fees, indicating Collier County would agree that RTG was entitled to attorneys' fees, conditioned on RTG being the prevailing party following Collier County's appeal to the Eleventh Circuit. Doc. 45.   Collier County indicated that notwithstanding the stipulation, it contested the amount of fees sought by RTG. *Id.*   The undersigned entered a Report and Recommendation recommending RTG's motion for attorneys' fees be denied without prejudice with leave to refile within thirty days of the entry of a mandate by the Eleventh Circuit on Collier County's pending appeal, which Judge Chappell adopted over RTG's objections on June 27, 2017. Docs. 46, 51; *see also* Docs. 49, 50.

The Eleventh Circuit affirmed the Order dismissing the case, and the mandate was entered on February 13, 2018. Docs. 53, 54.   On March 8, 2018, RTG re-filed its motion for attorneys' fees, seeking an award of $162,675.00. Doc. 55.   Collier County filed a response in opposition, indicating it does not dispute RTG is entitled

to attorneys' fees but arguing the amount sought is not reasonable.   Doc. 57.   On April 19, 2018, the Eleventh Circuit transferred a motion for attorneys' fees RTG filed with the appellate court to the district court "for consideration of the issues of entitlement and the reasonable amounts of appellate attorney's fees, if any, to be awarded."   Doc. 58; *see* Doc. 59.   Collier County did not respond to the motion at the appellate or district court level, and the time to do so has passed.   The matter is ripe for judicial review.

## II.   Analysis

Parties generally are required to bear their own litigation expenses regardless of who wins or loses.   *Fox v. Vice*, 563 U.S. 826, 832 (2011).   Exceptions exist, however, where Congress has authorized courts to deviate from this rule in certain types of cases by shifting fees from one party to another.   *Id.*   And "in diversity cases[,] a party's right to attorney's fees is determined by reference to state law." *Prime Ins. Syndicate, Inc. v. Soil Tech Distribs., Inc.*, 270 F. App'x 962, 963 (11th Cir. 2008).   Here, RTG argues it is entitled to attorneys' fees incurred at the district court and appellate court levels under Sections 73.091 and 73.131 of the Florida Statutes, respectively.   The Court will address each in turn.

### a.  Motion for Fees Incurred at District Court Level (Doc. 55)

#### i.   Entitlement to Fees

Under the Florida Constitution, "[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner . . . ." Fla. Const. art. X, § 6.  As such, "[i]t is . . . fundamentally clear that full compensation under the Florida Constitution includes the right to a reasonable attorney's fee for the property owner." *Joseph B. Doerr Trust v. Cent. Fla. Expressway Auth.*, 177 So. 3d 1209, 1215 (Fla. 2015).  Section 73.091(1) of the Florida Statutes indicates that in eminent domain cases, "[t]he petitioner [seeking condemnation of private land] shall pay attorney's fees as provided in [§] 73.092[,]" and "[n]o prejudgment interest shall be paid on costs or attorney's fees."  As discussed below, § 73.092 explains how reasonable attorneys' fees should be calculated.

Florida courts have held that "[a]ttorney's fees incurred in proceedings in the trial court and on appeal that *arise out of and are ancillary to the original proceeding in condemnation* are . . . payable by the state pursuant to sections 73.091 and 73.131." *Schick v. Fla. Dep't of Agric. & Consumer Srvs.*, 586 So. 2d 452, 454 (Fla. Dist. Ct. App. 1991) (emphasis added) (citing *State Dep't of Transp. v. Shaw*, 303 So. 2d 75, 77 (Fla. 1st DCA 1974)).  A proceeding arises out of or is ancillary to the original condemnation action if it involves a dispute "arising as a direct result of the condemnation proceedings." *Seminole Cty. v. Butler*, 676 So. 2d 451, 454 (Fla. 5th DCA 1996) (internal quotation marks omitted) (quoting *Terry v. Conway Land, Inc.*, 508 So. 2d 401, 404 (Fla. 5th DCA 1987), *approved*, 542 So. 2d 362 (Fla. 1989)); *see*

*also Schick*, 586 So. 2d at 453 (finding attorneys' fees incurred during mandamus action compensable under § 73.091 because it was "a proceeding supplemental or ancillary to the condemnation suit necessarily filed to obtain full compensation for the taking of appellant's property as guaranteed by [the Florida Constitution]."); *Shaw*, 303 So. 2d at 77 (finding attorneys' fees incurred during action to receive replacement housing allowance related to compensation for residential taking compensable under § 73.091 because the suit was "a direct outgrowth of the eminent domain proceeding" that would not have happened but for the taking of the residential property).

Here, it is undisputed that RTG is entitled to recover attorneys' fees. *See* Doc. 45; Doc. 55 at 9; Doc. 57 at 1. The Honorable Sheri Polster Chappell implicitly acknowledged this case arises out of the original condemnation proceeding:

> The Amended Complaint indicates Plaintiff "has paid CVS and RTG the damages awarded in full." Plaintiff had ample time to appeal the state court judgment, but it did not. Plaintiff now brings its claim close to three years later. This is not the typical unjust enrichment claim. Rather, this claim is a collateral attack on a jury verdict.

Doc. 33 at 4 (emphasis omitted) (citations omitted). In other words, "[t]he suit giving rise to this controversy was ancillary to, and a direct outgrowth of the eminent domain proceeding" because this suit would not have happened but for the original condemnation action. *See Shaw*, 303 So. 2d at 77. Accordingly, the Court recommends finding RTG is entitled to fees under Fla. Stat. § 73.091.[4]

---

[4] The Court notes that the parties appear to dispute whether RTG's status as a prevailing party is the reason RTG is entitled to such fees. *Compare* Doc. 49 at 4 ("It is important to note that Sections 73.091 and 73.092(2) are not prevailing party statutes. Instead, they are statutory provisions that implement the constitutional mandate of full

*ii.  Reasonableness of Fees*

A reasonable attorney fee is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate for the relevant type of litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Lee Cty. v. Tohari*, 582 So. 2d 104, 105 (Fla. 2d DCA 1991).  When determining appropriate attorneys' fees for a supplemental proceeding[5] to an eminent domain action, the court also must consider certain statutory factors:

(a) The novelty, difficulty, and importance of the questions involved.

(b) The skill employed by the attorney in conducting the cause.

(c) The amount of money involved.

(d) The responsibility incurred and fulfilled by the attorney.

(e) The attorney's time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client.

(f) The fee, or rate of fee, customarily charged for legal services of a comparable or similar nature.

(g) Any attorney's fee award made under subsection (1).

---

compensation, which include the payment of attorneys' fees."), *with* Doc. 45 (consenting to RTG's entitlement to attorneys' fees only if RTG is the prevailing party after the appeal to the Eleventh Circuit), Doc. 57 ("The County does not dispute that RTG is the prevailing party and entitled to recover its ***reasonable*** attorneys' fees." (emphasis in original) (citing Fla. Stat. § 73.091(1))).  Because RTG prevailed and the parties agree RTG is entitled to attorneys' fees, the Court need not decide today for the purposes of this recommendation whether RTG also would be entitled to attorneys' fees under § 73.091 if it did not prevail.

[5] Generally, a "supplemental proceeding" occurs after a final judgement has been entered.  *Sw. Fla. Water Mgmt. Dist. v. Shea*, 86 So. 3d 582, 584 (Fla. 2d DCA 2012) (citing *Fla. Dep't of Transp. v. Smithbilt Indus., Inc.*, 715 So. 2d 963, 967 (Fla. 2d DCA 1998)).  Because a final judgment was entered in the eminent domain case prior to the instant action, the parties evidently agree this case constitutes a "supplemental proceeding" within the meaning of § 73.092(2).  *See* Doc. 55 at 14; Doc. 57 at 2.

Fla. Stat. § 73.092(2).   "In determining the amount of attorney's fees to be paid . . . under subsection (2), the court shall be guided by the fees the defendant would ordinarily be expected to pay for these services if the petitioner were not responsible for the payment of those fees."   Fla. Stat. § 73.092(3).   The defendant is required to provide a fee agreement with its attorney if one exists, "and the court must reduce the amount of attorney's fees to be paid by the defendant by the amount of any attorney's fees awarded by the court."   Fla. Stat. § 73.092(5).   Further, "in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client."   *Tohari*, 582 So. 2d at 104-05 (quoting, *e.g.*, *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1151 (Fla. 1985)).

In support of its request for fees incurred by RTG's attorneys, D. Tobyn DeYoung, Esq. and James A. Helinger, Jr., Esq., RTG filed an Affidavit of Attorneys' Fees Incurred, including invoices containing timesheets, and an affidavit submitted by CVS' counsel in this action, Scott J. Johnson, Esq.   Doc. 56-1; Doc. 56-2.   Upon the Court's direction, counsel for RTG informed the Court that they do not have a fee agreement with RTG.   Doc. 61.   Collier County opposes the amount of fees sought, arguing the statutory factors support a reduction in RTG's requested attorneys' fees. Doc. 57 at 3-6.   The Court agrees and thus recommends the fees be reduced as discussed below.

## 1.   Reasonable Hours

An attorney should exercise proper "billing judgment" and exclude those hours that would be unreasonable to bill a client or opposing counsel.   *Duckworth v.*

*Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996) (citing *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988)).   Having conducted a thorough review of the invoices containing RTG's counsel's timesheets, the Court recommends several categories of reductions are necessary.   Except as noted below, the Court finds the remainder of the billed hours requested to be reasonable.

(a)   Hours Spent on Defamation Claim

As noted by Collier County and by Carlos A. Kelly, Esq. in his affidavit supporting Collier County, "Mr. DeYoung [(DTD)] billed a total of 14.5 hours related to what appears to be a potential defamation claim against the Collier County Attorney, Jeffrey Klatzkow."   Doc. 57 at 4, 15.   Collier County references the following entries:[6]

| 10/25/16 | DTD | Legal research regarding defamation, slander, libel; review County Commission Meeting; review article regarding lawsuit; telephone conference with CVS counsel. | 5.75 |
| 10/28/16 | DTD | Review news video containing Klatzhow defamatory remarks; discuss same with CVS and with client; prepare correspondence to client; continue strategy and outline of defenses to allegations in the complaint. | 4.50 |
| 11/01/16 | DTD | Review ethical rules regarding statements to media post trial; continue review of transcripts and exhibits in light of allegations of complaint; conference with CVS counsel; conference with client. | 2.25 |
| 11/02/16 | DTD | Continue review of Florida Bar rules regarding same; continue drafting and revising letter to attorney, Klatzkow regarding complaint; conference with attorneys regarding same. | 2.00 |

---

[6] All reproductions of invoices in this Report and Recommendation are for ease of reference only.   They are intended to convey succinctly the relevant portions of information from the invoices.

*See* Doc. 56-1 at 3-4.   Collier County argues these hours are not compensable because they were not reasonably incurred in defense of Collier County's claim, but instead they "relate to a potential tort claim against a non-party that [RTG] never raised." Doc. 57 at 4.   The Court agrees hours spent pursuing the defamation claim are not reasonably related to this lawsuit and thus are not compensable.   Accordingly, the Court recommends reducing the requested fees by eliminating the October 25, 2016 and November 2, 2016 entries.   Because the entries for October 28, 2016 and November 1, 2016 contain some compensable time, the Court recommends adjusting the time as follows:[7]

| 10/28/16 | DTD | Prepare correspondence to client; continue strategy and outline of defenses to allegations in the complaint. | 2.25 |
| 11/01/16 | DTD | Continue review of transcripts and exhibits in light of allegations of complaint; conference with CVS counsel; conference with client. | 1.69 |

These adjustments amount to a total reduction of 10.56 to Mr. DeYoung's hours.

(b)   Multiple Attorneys

In exercising "billing judgment," attorneys must exclude "excessive, redundant, or otherwise unnecessary [hours]."   *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Hensley*, 461 U.S. at 434). These hours tend to occur when more than one attorney represents a client.   *Id.* at

---

[7] The Court notes that counsel for RTG use "block billing," meaning they list various tasks for a single day without identifying how much time was spent on each.   *See* Doc. 56-1 at 3-11; *see also* Doc. 57 at 4.   Therefore, there is no perfect system for the Court to adjust the attorneys' hours.   The Court will make the necessary adjustments by assigning each task listed for a day an equal portion of the time billed, eliminating any tasks that are not compensable, and adding up the time that had been allocated for the remaining tasks to determine the compensable time for that day.

432 (citation omitted).   While "[t]here is nothing inherently unreasonable about a [claimant] having multiple attorneys," it is the claimant's burden to show that the time spent by those attorneys reflects a distinct contribution by each lawyer to the case.   *Id.* (citation omitted).   Here, there are several billing entries reflecting Mr. DeYoung and Mr. Helinger did duplicative work or were both involved in conferences. The Court recognizes that two attorneys with Mr. DeYoung's and Mr. Helinger's (JHJ) experience can independently contribute to work on a time-intensive project or dispositive motion—such as their successful motion to dismiss—but there are instances where the attorneys did duplicative work on procedural matters:

| | | | |
|---|---|---|---|
| 11/30/16 | DTD | Review federal rules regarding removal; conference with client regarding property party and removal draft 57.105 letter and motion; conference with CVS counsel regarding removal . . . . | 4.50 |
| 11/30/16 | JHJ | Research and consider removal to Federal Court; confer with client; confer with CVS representatives[8] | 5.00 |
| 01/19/17 | DTD | Review certification of interested parties (CVS); prepare same; notice of pending of other actions . . . . | 0.50 |
| 01/18/17 | JHJ | Receipt and review CVS Notice of Interested Persons And Notice of Pendency of Other Actions | 0.25 |
| 02/16/17 | DTD | . . . Review Collier County's Response in Opposition to CVS Motion to Stay Discovery Pending Ruling on its Motion to Dismiss; review cited cases and legal research regarding same. | 5.00 |
| 02/16/17 | JHJ | . . . receipt and review Collier County Opposition to Staying Discover[y] and Research Cases | 3.00 |

*See* Doc. 56-1 at 4-6, 9-11.   Such entries are excessive, redundant or otherwise unnecessary.   The Court therefore recommends reducing the requested fees by

---

[8] The Court notes CVS' counsel, not RTG's counsel, ultimately filed the Notice of Removal.   *See* Doc. 1.

eliminating Mr. Helinger's January 18, 2017 entry and adjusting the following

entries:[9]

| 11/30/16 | DTD | Continue review of file regarding complaint and defenses; conference regarding strategy of counterclaims | 1.80 |
| 02/16/17 | JHJ | Receipt and review Collier County Public Records and Meeting Minutes transcript; e-mail to Scott Johnson | 2.00 |

These adjustments amount to a total reduction of 2.70 to Mr. DeYoung's hours and

1.25 to Mr. Helinger's hours.

(c)   Travel Time

As Collier County points out, "[i]n Florida, the longstanding rule is that an

award of attorneys' fees should not include travel time without proof that a competent

local attorney could not be obtained." Doc. 57 at 5; *see Fence Wholesalers of Am.,*

*Inc. v. Beneficial Comm. Corp.*, 465 So.2d 570, 570 (Fla. 4th DCA 1985) (remanding

case for reduction of travel time from attorneys' fees award "when there was no

showing a competent local attorney could not be obtained"); *Chandler v. Chandler,*

330 So.2d at 190, 191 (Fla. 2d DCA 1976); *see also Griffin v. Philip Morris USA, Inc.,*

No. 3:09-cv-11128, 2014 WL 12619188, at *4 n.6 (M.D. Fla. Nov. 3, 2014).   Here, both

Mr. Helinger and Mr. DeYoung billed for their travel time to Fort Myers for a hearing

on March 8, 2017:

| 03/08/17 | DTD | Prepare, travel and attend Pretrial Hearing in Ft. Myers; conference with counsel. | 4.00 |
| 03/08/17 | JHJ | Travel and attend Pretrial Hearing in Ft. M[y]ers; conference with attorneys | 4.00 |

---

[9] The adjustments to block billings were made as described in n.7, *supra*.

*See* Doc. 56-1 at 7, 11.   RTG failed to demonstrate that a competent local eminent domain attorney could not be obtained.   Therefore, the Court recommends adjusting both attorneys' hours by 3.50 hours to eliminate the approximate travel time to and from the United States Courthouse and Federal Building in Fort Myers.[10]

(d)   Total Adjustments

Based on the foregoing, the Court recommends adjusting Mr. DeYoung's hours down by 16.76 hours, resulting in a reasonable total of 160.99 hours.   The Court recommends adjusting Mr. Helinger's hours down by 4.75 hours, resulting in a reasonable total of 92.00 hours.

2.   Reasonable Rate

The burden is on the fee applicant "to produce satisfactory evidence" that the rate is in line with those prevailing in the community.   *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see also Norman*, 836 F.2d at 1299 (defining a reasonable hourly rate as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation"). The relevant legal community here is the surrounding counties in the Fort Myers Division of the Middle District of Florida.   *See Olesen-Frayne v. Olesen*, 2:09-cv-49-FtM-29DNF, 2009 WL 3048451, at *2 (M.D. Fla. Sept. 21, 2009).

Upon review of the timesheets as well as the affidavits of Mr. Johnson and Mr. Kelly, the Court recommends the requested rates should be reduced.   The invoices

---

[10]  *See* Directions from Helinger DeYoung, 4756 Central Avenue, St. Petersburg, Florida 33711 to United States Courthouse and Federal Building, 2110 First Street, Fort Myers, FL 33901, Google Maps (last visited Oct. 4, 2018).

RTG submitted with its Affidavit of Attorneys' Fees Incurred indicate Mr. DeYoung billed RTG at an hourly rate of $575.00, and Mr. Helinger billed at an hourly rate of $625.00.   Doc. 56-1 at 8, 11.   As Collier County notes, however, Mr. DeYoung and Mr. Helinger retroactively increased their hourly rates from the $500.00 hourly rate they previously requested both in this case and in the Eleventh Circuit appeal.   *See* Doc. 44-1 at 2, 8, 11; Doc. 57 at 6; Doc. 59 at 28, 76-77.   Further, the original invoice submitted to this Court indicated that both attorneys charged RTG at a rate of $500.00 per hour, and the affidavit Mr. DeYoung submitted to the Eleventh Circuit stated his hourly rate was $500.00.   Doc. 44-1 at 8, 11; Doc. 59 at 76.   Counsel for RTG asserts "the rate of $500.00 per hour reflected in the first invoice is the hourly rate they charge for regular billing, thirty-day invoices wherein fees are guaranteed and paid on a regular basis."   Doc. 61 at 3.   Because counsel for RTG agreed to forego monthly billing in this case in expectation that Collier County, rather than RTG, would pay counsel's fees, they billed "at a higher hourly rate in recognition of the risks associated with recovering fees and with the delay in payment."   *Id.*

Mr. Johnson stated in his affidavit supporting RTG's request for fees that Mr. Helinger is a former Chief Assistant Pinellas County Attorney and Special Counsel to the Florida Department of Transportation, and he "has been in private practice for over 35 years."   Doc. 56-2 at 2.   He stated that Mr. DeYoung worked as an attorney at Carlton Fields, is a former Assistant Attorney General in the Bureau of Eminent Domain and "has been in private practice representing property owners in eminent domain and property rights cases for over twenty years."   *Id.*   "He is the current

Vice-Chairman and the incoming Chairman of the Florida Bar's Eminent Domain Committee, and is the principle author of *Florida Eminent Domain Practice and Procedures Manual*, Chapter 7, Orders of Taking (10th ed. 2017)." *Id.* at 2-3.   Both attorneys are AV-rated and specialize in eminent domain and property rights cases. *Id.* at 3.   Mr. Johnson opined that a "reasonable hourly rate customarily charged for service of a similar nature in the Collier County community ranges from $475 to $625 per hour."   *Id.* at 6.

In his affidavit supporting Collier County, Mr. Kelly stated that the survey of southwest Florida attorneys' fees indicated rates in 2015 ranged from $250.00 to $530.00 per hour for senior partners/shareholders.   Doc. 57 at 16.   Based on Mr. Helinger's and Mr. DeYoung's qualifications as detailed above, $500.00 is a reasonable hourly rate on the upper end of the range referenced by Mr. Kelly.   The rate also is consistent with the range provided by Mr. Johnson.   Counsel for RTG provides no legal authority supporting its request for a higher fee due to the anticipated risk in planning to seek fees from Collier County and the delay in payment.   *See generally* Docs. 55, 61.   The Court recommends it is unreasonable for RTG's counsel to alter its originally requested fees *post facto* and to expect Collier County to pay a premium on what counsel would have charged RTG in the course of regular billing.   *See* Doc. 61 at 3; *cf. Tohari*, 582 So. 2d at 104-05.   Based on the prior invoice and Mr. DeYoung's sworn statement, the Court recommends that $500.00 per hour is a reasonable rate for both Mr. Helinger and Mr. DeYoung.   Based on the

adjusted number of hours reasonably incurred and the reduced hourly rate, the Court recommends an award of $126,495.00 in attorneys' fees.

### 3.   Statutory Factors

The Court has considered all the statutory factors set forth in § 73.092(2) and recommends that they support a finding that an award of $126,495.00 in attorneys' fees is reasonable.   Although claims of unjust enrichment and conspiracy to commit fraud are not inherently novel or difficult, the procedural posture of this case makes it unique.   It is undisputed that Mr. Helinger and Mr. DeYoung are highly regarded, experienced attorneys who specialize in eminent domain and property rights.   Doc. 56-2 at 2-3; Doc. 57 at 3-4 ("Mr. DeYoung and Mr. Helinger both deservedly enjoy reputations as outstanding advocates in the field of eminent domain and prevailed by dispositive motion in the case at bar against Collier County, who was represented by an outstanding business litigation advocate.").   The amount of money involved in the action was substantial: "Collier County sought to recoup . . . severance damages of $3,100,000.00, attorneys' fees of $599,880.00, and costs."   *See* Doc. 57 at 4.

The Court has recommended reducing the billed time to reflect the attorneys' time and labor reasonably required to adequately represent RTG, taking into account that RTG benefitted from its attorneys' successful motion to dismiss.   As discussed above, the hourly rate of $500.00 is in line with rates customarily charged by attorneys in southwest Florida, and there is no reason to believe it is unreasonable for attorneys who practice eminent domain and property rights law specifically to charge an hourly rate of $500.00.   The Court also notes the recommended fee award

does not exceed any fee agreement reached between RTG and its counsel because there is no fee agreement in this case.   *See* Doc. 61 at 1, 3; *see also Tohari*, 582 So. 2d at 104-05.   Therefore, the Court recommends RTG be awarded $126,495.00 in attorneys' fees incurred at the district court level.[11]

### b.  Motion for Fees Incurred at Appellate Level (Doc. 59)

#### i.  *Entitlement to Fees*

Appellate attorneys' fees in eminent domain cases are assessed separately from fees incurred at the trial level.   *State, Dep't of Transp. v. Skinners Wholesale Nursery, Inc.*, 736 So. 2d 3, 6 (Fla. 1st DCA 1998).   Section 73.131 requires the petitioner seeking condemnation of private land to "pay all reasonable costs of the proceedings in the appellate court, including a reasonable attorney's fee to be assessed by that court, except upon an appeal taken by a defendant in which the judgment of the lower court shall be affirmed."   Fla. Stat. § 73.131(2).   Thus, where the condemning authority takes the appeal, it will owe the property owner's appellate attorneys' fees regardless of the appeal's outcome.   *Skinners Wholesale Nursery, Inc.*, 736 So. 2d at 7.   Further, as stated above, "[a]ttorney's fees incurred in proceedings in the trial court *and on appeal* that arise out of and are ancillary to the original proceeding in condemnation are . . . payable by the state pursuant to sections

---

[11] Both parties seem to agree that RTG is entitled to prejudgment interest on the award of attorneys' fees, but they disagree as to when it would begin to accrue.   *See* Doc. 55 at 16; Doc. 57 at 6.   As of January 1, 2000, however, § 73.091 prohibits prejudgment interest on costs or attorneys' fees.   *See* Fla. Stat. § 73.091(1); *see also* 1999 Fla. Sess. Law Serv. Ch. 99-385 (West) ("amending s. 73.091, F.S.; providing that no prejudgment interest shall be paid on costs or attorney's fees in eminent domain[.]").   Thus, the Court recommends against awarding any prejudgment interest.

73.091 *and 73.131.*" *Schick*, 586 So. 2d at 454 (emphasis added) (awarding property owner with attorneys' fees under § 73.131(2) for fees incurred during appeal of mandamus action that was ancillary to original eminent domain action).   As discussed above, this case—and by extension, its appeal—arise out of the original condemnation proceeding.   Therefore, the Court recommends RTG is entitled to reasonable attorneys' fees under § 73.131(2).

### ii.   *Reasonableness of Fees*

As discussed above, a reasonable attorney fee is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate for the relevant type of litigation.   *See Hensley*, 461 U.S. at 433; *see also Skinners Wholesale Nursery, Inc.*, 736 So. 2d at 7 (holding the lodestar approach should be used in calculating reasonable appellate fees under § 73.131(2)).   Again, the Court will conduct an hour-by-hour analysis and exclude hours that were not reasonably expended or are redundant, excessive, or otherwise unnecessary.   *Hensley*, 461 U.S. at 434; *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).   If the documentation in support of the request is inadequate, the court will reduce the award accordingly.   *Hensley*, 461 U.S. at 434.

In support of its request for attorneys' fees, RTG filed a declaration by appellate counsel Laurie Webb Daniel (LWD), a declaration by Mr. DeYoung, invoices containing timesheets for all attorneys involved in the appeal, and declarations by Kimberly Ashby, Esq. of Orlando, Florida and John Chandler, Esq. of Atlanta, Georgia.   Doc. 59 at 24-93.   RTG seeks fees incurred by attorneys Ms. Daniel,

Matthew D. Friedlander, Mr. Johnson, Min K. Cho (MKC), Robin M. Nauman (RMN) and Mr. DeYoung as well as paralegal Denise Lobodinski.   *See id.* at 13-15.   Collier County did not file any opposition.   *See* n.3, *supra*.   The Court nevertheless recommends reducing the requested fees as discussed below.

1.  Reasonable Hours

Having conducted a thorough review of the invoices containing GRC's counsel's time sheets, the Court recommends several categories of reductions are necessary. Except as noted below, the Court recommends the remainder of the billed hours requested to be reasonable.

(a) Multiple Attorneys

There are several billing entries indicating RTG's appellate attorneys did duplicative work without making any apparent independent contribution.   Mr. Cho and Ms. Nauman reviewed correspondence with opposing counsel about attorneys' fees, but only Ms. Nauman analyzed it.   *See* Doc. 59 at 38.   Ms. Daniel reviewed emails and a response regarding a "jurisdictional issue," which Mr. Cho, Ms. Nauman and Mr. Friedlander also reviewed and worked on.   *See id.* at 38-39.   Ms. Nauman reviewed emails regarding an extension of time and mediation scheduling, but Mr. Cho otherwise handled both.   *Id.* at 39, 42.   Finally, Mr. DeYoung billed time for reviewing a motion for extension and a notice of waiver of right to file reply brief, but Ms. Nauman also reviewed both and corresponded about the extension.   *Id.* at 49-50, 80.   Because counsel for RTG did not demonstrate independent contribution by each attorney for such entries, the Court recommends eliminating Mr. Cho's June 15,

2017 entry about attorneys' fees, Ms. Daniel's June 21, 2017 entry, Ms. Nauman's

June 23, 2017 entries, and Mr. DeYoung's September 26, 2017 and October 10, 2017

entries.  *Id.* at 38-39, 80.   These adjustments amount to reductions of 0.20 from Mr.

Cho's hours, 0.20 from Ms. Daniel's hours, 0.40 from Ms. Nauman's hours, and 0.50

from Mr. DeYoung's hours.

### (b) Vague Charges

The following charges are too vague for the Court to determine that they

reasonably were incurred in this action:

| | | | |
|---|---|---|---|
| 06/14/17 | LWD | Review email correspondence regarding appeal. | 0.20 |
| 07/11/17 | RMN | Analyze issues [redaction] | 0.60 |
| 07/19/17 | RMN | Analyze arguments [redaction] | 0.40 |
| 08/03/17 | MKC | Review [redaction] | 0.70 |
| 08/14/17 | RMN | Review [redaction] | 0.30 |
| 08/23/17 | RMN | Research [redaction] | 0.60 |
| 08/24/17 | RMN | Analyze [redaction] | 0.50 |
| 10/10/17 | RMN | Correspondence regarding [redaction] | 0.30 |

*See* Doc. 59 at 38, 42, 45-49, 49.   Therefore, the Court recommends eliminating them.

These adjustments amount to reductions of 0.20 from Ms. Daniel's hours, 2.70 from

Ms. Nauman's hours, and 0.70 from Mr. Cho's hours.

### (c) Total Adjustments

Based on the foregoing, the Court recommends adjusting down Mr. Cho's hours

by 0.90 hours, resulting in a reasonable total of 38.50 hours; Ms. Daniel's hours by

0.40 hours, resulting in a reasonable total of 22.80 hours; Ms. Nauman's hours by

3.10 hours, resulting in a reasonable total of 10.60 hours; and Mr. DeYoung's hours

by 0.50 hours, resulting in a reasonable total of 10.75 hours for the appeal.   *See* Doc.

59 at 51, 63, 68, 81.

2.  Reasonable Rate

Upon review of the timesheets and the declarations of Ms. Daniel, Mr. DeYoung, Ms. Ashby and Mr. Chandler, the Court recommends the requested rates should be reduced.   RTG states the relevant legal community for determining whether counsel's hourly rates are reasonable is Atlanta, Georgia because that is "where the appeal was based." Doc. 59 at 28-29.   RTG cites no case law to support this contention.   Generally, "the 'relevant market' for purposes of determining the hourly rate for an attorney's services is 'the place where the case is filed,'" and fee applicants seeking to recover rates for non-local attorneys must demonstrate a lack of local attorneys capable of handling the case.   See *Barnes*, 168 F.3d at 437.   Thus, it would appear that for RTG to recover non-local rates for attorneys who are not located in southwest Florida, RTG would have to demonstrate that there is a lack of attorneys practicing in southwest Florida who were willing and able to handle the appeal.   See *id.*   RTG has made no such showing.   Accordingly, although the declarants state the hourly rates requested for each of the attorneys are reasonable in their respective markets, the Court recommends that the relevant legal community is Fort Myers, Florida, where the case was filed.   See Doc. 59 at 28-33, 76-77, 88-93; *Barnes*, 168 F.3d at 437.

Ms. Daniel's declaration states she is a partner in Holland & Knight's Atlanta office.   Doc. 59 at 29.   Her customary hourly rate is $895.00, but she agreed to bill this matter at $870.00.   *Id.*   She has been practicing law since 1982, and she is the chair of her firm's national Appellate Team and the leader of her firm's Atlanta

Litigation Practice Group.  *Id.*  She has appeared in appellate and trial courts nationwide.  *Id.*  Mr. Friedlander is an attorney in Holland & Knight's Atlanta office.  *Id.* at 30.  His customary rate is $375.00, but his agreed rate in this case was $325.00.  *Id.*  He has been licensed to practice law since 2011, and his practice focuses on appellate advocacy in state and federal courts.  *Id.*  Ms. Lobodinksi is a paralegal in Holland & Knight's Atlanta office, and her customary hourly rate is $275.00.  *Id.* at 31.

Mr. Johnson is a partner at Holland & Knight's Orlando office.  *Id.*  His customary hourly rate is $650.00, but his agreed rate for this case was $625.00.  *Id.* He has been licensed to practice law since 1974, and his areas of focus include eminent domain, condemnation, appellate litigation and real estate law.  *Id.*  He chairs Holland & Knight's Eminent Domain Practice Group, and he has over 40 years of experience handling eminent domain matters.  *Id.* at 31-32.  Mr. Cho is a former partner in Holland & Knight's Orlando office.  *Id.* at 32.  His customary hourly rate was $490.00.  *Id.*  He has been licensed to practice law since 2004, and his practice focused on complex commercial and business litigation.  *Id.*  Robin Nauman is a mid-level associate in Holland & Knight's Orlando office.  *Id.* at 33.  Her customary hourly rate is $335.00, and her agreed rate in this case was $300.00.  *Id.*  She has been licensed to practice law since 2013, and she has experience with complex civil litigation in state and federal courts.  *Id.*

Based on their experience and expertise, the Court recommends an hourly rate of $550.00—representing a slight upward adjustment to the top of the range in the

survey of southwest Florida attorneys referenced by Mr. Kelly—would be reasonable for Ms. Daniel and Mr. Johnson.   *See* Doc. 57 at 16.   Based on the same survey, the Court recommends an hourly rate of $350.00 would be reasonable for Mr. Cho.   *See id.*   Because at least one court in this division found an hourly rate of $225.00 objectively reasonable for experienced associates in 2015, the Court recommends an hourly rate of $250.00 for Mr. Friedlander and Ms. Nauman, adjusted upward slightly to account for the three years that have passed since then.   *See, e.g.,* *Breaking Glass Pictures, LLC v. Devora*, No. No. 2:13-cv-331-FtM-38DNF, 2015 WL 1020343, at *4 (M.D. Fla. Mar. 9, 2015).   The Court recommends $95.00 is a reasonable hourly rate for Ms. Lobodinski because it aligns with paralegal rates other courts in this district have found reasonable.   *See, e.g.,* *Kennedy v. Three J's LLP*, No. 2:16-cv-214-FtM-38MRM, 2018 WL 1036989, at *4-5 (M.D. Fla. Feb. 6, 2018). As discussed above, the Court recommends $500.00 is a reasonable fee for Mr. DeYoung.   Accordingly, the Court recommends RTG be awarded $36,007.50 in attorneys' fees incurred at the appellate court level.

## III.   Conclusion

In conclusion, the Court recommends awarding RTG attorneys' fees incurred by Mr. Helinger and Mr. DeYoung at the district court based on the following adjustments:

| Requested Hours | Recommended Reduction | Attorney and Rate | Remaining Hours | Total |
|---|---|---|---|---|
| 177.75 | 16.76 | Mr. DeYoung @ $500/hour | 160.99 | $80,495.00 |
| 96.75 | 4.75 | Mr. Helinger @ $500/hour | 92.00 | $46,000.00 |

Thus, the Court recommends a fee award of $126,495.00 for the fees incurred at the district court level.

The Court recommends awarding RTG attorneys' fees incurred by Ms. Daniel, Mr. Friedlander, Ms. Lobodinski, Mr. Johnson, Mr. Cho, Ms. Nauman and Mr. DeYoung at the appellate level based on the following adjustments:

| Requested Hours | Recommended Reduction | Attorney and Rate | Remaining Hours | Total |
|---|---|---|---|---|
| 23.20 | 0.40 | Ms. Daniel @ $550/hour | 22.80 | $12,540.00 |
| 5.70 | 0.00 | Mr. Friedlander @ $250/hour | 5.70 | $1,425.00 |
| 0.50 | 0.00 | Ms. Lobodinski @ $95/hour | 0.50 | $47.50 |
| 0.90 | 0.00 | Mr. Johnson @ $550/hour | 0.90 | $495.00 |
| 39.40 | 0.90 | Mr. Cho @ $350/hour | 38.50 | $13,475.00 |
| 13.70 | 3.10 | Ms. Nauman @ $250/hour | 10.60 | $2,650.00 |
| 11.25 | 0.50 | Mr. DeYoung @ $500/hour | 10.75 | $5,375.00 |

Thus, the Court recommends a fee award of $36,007.50 for the fees incurred on appeal.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.     Defendant, RTG LLC's, Motion for Attorneys' Fees (Doc. 55) be **GRANTED in part and DENIED in part** and RTG be awarded **$126,495.00** in attorneys' fees.

2.     Appellee RTG, LLC's Motion for Attorneys' Fees (Doc. 59) be **GRANTED in part and DENIED in part** and RTG be awarded **$36,007.50** in attorneys' fees.

**DONE** and **ENTERED** in Fort Myers, Florida on this 10th day of October, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record